STEELE v. HUGHES.

Opinion delivered July 15, 1912.

1. CORPORATIONS—STOCK INCREASE—VALIDITY.—As corporations are authorized by Const. 1874, art. 12, sec. 8, and Kirby's Digest, section 838, to make an increase of stock at a stockholders' meeting of which the stockholders had not less than sixty days' notice, one who has subscribed and paid for stock of an increase made by consent of the stockholders at a meeting of which they had no such notice is estopped to claim that he is not a stockholder, and that the corporation owes him what he paid therefor. (Page 524.)

2. SAME—ANNUAL CERTIFICATE—FAILURE TO FILE.—Failure of the president of a corporation to file the annual certificate showing its condition, as required by Kirby's Digest, section 848, does not make him liable to a stockholder. (Page 528.)

Appeal from Saline Circuit Court; W. H. Evans, Judge; affirmed.

STATEMENT BY THE COURT.

On the 22d day of September, 1908, the chancellor, in vacation, appointed a receiver for the Saline County Bank upon a petition therefor by the officers of the bank.

Appellant, on the 17th day of June, 1909, filed an intervention, wherein she alleged that the Saline County Bank was incorporated under the laws of Arkansas in 1894; that John L. Hughes was its president until his death, which occurred in 1908; that the capital stock of the bank was fixed by its charter at the sum of $25,000, all of which was subscribed at the time of its incorporation; that on February 8, 1908, the bank, through its officers, represented to her that it had increased its capital stock to the sum of $30,000, and solicited appellant to subscribe for $1,500 of its increase and she, confiding in and relying upon said statements and believing them to be true, did subscribe for $1,500 of the capital stock, and issued in payment therefor her check, payable to the order of the Saline County Bank, which was duly indorsed and paid; that the bank caused to be executed and delivered to her its certificate for sixty shares of its capital stock, and by the certificate it was made to appear that at the time of its issuance the bank did have a capital stock of $30,000 paid up; and, by its issuance of said certificate and the representations of the officers of the bank appellant, she

was led to believe, and did believe, that the capital stock of the bank was fully paid up in the sum of $30,000, but in truth there had never been any increase of its capital stock; that no amendment to the charter or articles of association had been made, no such action taken by the directors or stockholders thereof, nor with the clerk of Saline County, or with the Secretary of State, as required by the laws of Arkansas; and that the certificate of stock executed and delivered to her as aforesaid was and is an overissue, for which the corporation and the officers issuing said certificate, towit, John L. Steele, cashier, and John L. Hughes, deceased, president, became and were liable to appellant in the sum of $1,500."

In the second count, she reiterates the statements of the first, and alleges that, on account of the transactions set forth, the Saline County Bank became indebted to her on February 8, 1908, in the sum of $1,500 as for money had and received; that John L. Hughes at the time of said transaction was president of said corporation, whereby it became and was his duty, according to the statutes of Arkansas, to annually make a certificate showing the condition of affairs of said corporation, as nearly as the same might be ascertained, and to file said certificate with the clerk of Saline County on or before the 15th day of February or August; that defendant John L. Hughes wholly failed, refused and neglected to make and file said certificate, whereby he became liable, under the statutes of Arkansas, for all debts of said corporation during said period of neglect or refusal."

She set up the death of John L. Hughes and the appointment of George Hughes as his executor, and prayed judgment against George Hughes, executor of the estate of John L. Hughes, deceased, in the sum of $1,500.

The intervention of appellant as to George Hughes, as executor, was, upon the court's own motion, transferred to the Saline Circuit Court.

Appellee, George Hughes, filed his answer, in which he expressly denied the allegations as to misrepresentation on the part of the bank through its officers, and denied that, by means of statements and representations of the Saline County Bank, the intervener was led to believe and did believe that the capital stock of said bank was fully paid up in the amount

of $30,000. He alleged the truth to be that "on the said 8th day of February, 1910, the stockholders and directors of said bank met and increased the stock of said bank, according to law, to the sum of $30,000 paid-up capital, and that the said intervener subscribed to said stock in the sum of $1,500, which was paid for by said intervener on the 10th day of February, 1908, and that said intervener accepted this certificate of stock issued thereon and kept and held the same as a stockholder in said bank, and now has and holds the same as such."

He denied "that the bank took, had and received the said $1,500, or any part thereof, from the said intervener, or had or held such sum at any time when defendant's decedent (John L. Hughes) was in default in any statement required by law to be made or filed relating to the affairs of said bank;" and denied that the bank was due the appellant any sum contracted during any period of default upon the part of John L. Hughes as president of the bank.

The cause was submitted to the court, sitting as a jury, upon the testimony of S. B. Steele and an agreed statement of facts.

Steele testified that he was a nephew of John L. Hughes and a brother of John G. Steele, cashier of the Saline County Bank; that in September, 1907, his brother, the cashier, told him that the bank was going to increase its capital stock from $25,000 to $30,000 paid-up and solicited him to subscribe for part of it; that he mentioned the matter to his wife (appellant), and she expressed a willingness to subscribe for part of the stock provided John L. Hughes recommended it. He conducted the entire transaction as agent for his wife. Reorganization was postponed until February, 1908. Upon being informed by his brother that they were ready to reorganize, witness wrote to his uncle, John L. Hughes, with reference to the investment, and his uncle replied that it was a good investment; that he thought so well of it that he intended taking $20,000 additional stock. Whereupon witness wrote to his brother that appellant would take sixty shares at $25 each. A few days later witness received notice from his brother that the reorganization had been completed, with request to send check, whereupon appellant drew her check

for $1,500, dated February 8, 1908, payable to the order of the Saline County Bank, which check was duly presented and paid. About thirty days thereafter witness received the stock certificate. The stock certificate was exhibited, and was in the usual form, certifying "that Mrs. Hattie Steele is the owner of sixty shares of the capital stock of the Saline County Bank."

The agreed statement of facts is as follows:

"(1). The Saline County Bank was incorporated under the laws of the State of Arkansas, on the 27th day of November, 1894, with its domicile at Benton, Saline County, Arkansas. John L. Hughes, the defendant's testator, was elected president of said corporation at the first meeting of its stockholders, and continued to be president thereof from that time until his death, which occurred on the 8th day of September, 1908. The said Hughes died intestate, having nominated the defendant, George Hughes, as his executor, who was duly qualified as such, and ever since has been and now continues to be the executor of said will. Said will was duly probated in the county of Saline and State of Arkansas, and letters testamentary issued from the probate court of said county to the defendant, George Hughes.

"(2). By the original articles of association of the bank of Saline County its capital stock was limited to $25,000, all of which was subscribed at the time of its organization.

"(3). At the time that it was represented to the intervener that the capital stock of said bank had been increased to $30,000, no written notice of any character was given to any stockholder, calling a meeting for that purpose; there was no notice of any character given to any of the stockholders that a meeting would be called for that purpose, but the stockholders were notified that a meeting would be held on Monday, the 3d day of February, 1908. No stockholders were given this notice except Dr. D. Gann and Col. John L. Hughes, and they owned a large majority of the stock, and were present. At the time of this meeting John L. Hughes was president, John G. Steele its secretary and cashier, and Dr. D. Gann was a director. There were other subscribers to the original capital stock, all of whom, with the exception of F. W. Bush, claimed to have assigned their stock to Gann

Hughes or Steele, but no record of the transfer was ever made upon the stock books or other records of the corporation, and no certificate of transfer filed with the county clerk of Saline County. F. W. Bush, one of the original stockholders, about a year before the failure, took his certificate and delivered it to the bank without consideration, and claims thereby to have surrendered or donated his stock to the bank. At the meeting of February 3, 1908, no record was kept except a pencil memorandum of the secretary, which was accidentally lost or destroyed. There was no meeting of the directors of the bank on that date, it being a stockholders' meeting. No written notice of this meeting was given to any of the stockholders, nor advertised in any newspaper.

"(4). The president and directors of the Saline County Bank did not at any time after February 3, 1908, make a certificate of the amendment to charter or increase of the capital stock, as provided in sections 856 and 845, Kirby's Digest of the Statutes of Arkansas, nor did they file any certificate thereof with the clerk of the county of Saline or with the Secretary of the State of Arkansas.

"(5). Neither the president or secretary of the said corporation did at any time during the existence of said corporation up to the period of its insolvency make annually or at any other time a certificate showing the condition of the affairs of such corporation as nearly as the same could be ascertained on the 1st day of January, or of July next preceding the time of making such certificate, and did not in any manner comply with the provisions of section 848, Kirby's Digest of the Statutes of Arkansas.

"(6). It is further conceded that at the meeting upon the 3d day of February, 1908, there were present at the meeting W. N. McCray, J. D. Reed, H. F. Miller, E. Y. Stinson, John G. Steele, D. Gann and John L. Hughes; that it was generally understood among those who met at the time and place that the object of the meeting was a reorganization and increase of the capital stock of the Saline County Bank; that an attempt at reorganization and increase of the capital stock was made; that John L. Hughes subscribed $20,000 of the new capital, J. W. Ashby $125 of the proposed increased capital, Henley & McCray $500, E. Y. Stinson $500, J. D.

Reed $250, John G. Steele $500, H. F. Miller $100, Dr. D. Gann $500, Mrs. Hattie Steele $1,500; that of these sums John L. Hughes paid in at the time $20,000, Henry F. Miller paid $40, Mrs. Steele $1,500, J. W. Ashby $125; that it was intended to increase by this subscription the original stock to $30,000 paid up capital, $5,000 having been subscribed and paid up upon the original capital of said bank; that at the same meeting officers were elected as follows: John L. Hughes, president; E. Y. Stinson, vice-president; John G. Steele, cashier; R. W. Roberts, assistant cashier; directors, Dr. D. Gann, J. W. Ashby, J. D. Reed, W. N. McCray, H. F. Miller, John L. Hughes, E. Y. Stinson, John G. Steele.

"That immediately subsequent to the said meeting John G. Steele, cashier of said bank, published in the *Times-Courier,* a newspaper published in Benton, Saline County, Arkansas, the following advertisement, which was continued in the newspaper up to the time said bank suspended business:

$30,000.00                                          Capital $30,000.00
Increased Capital.
At a meeting of the stockholders of the
Saline County Bank
On Monday, February 3, the capital stock
was increased from $5,000 to $30,000.
Fully Paid.
The following officers were elected for the ensuing year:
President ........................................................John L. Hughes
Vice President ..............................................E. Y. Stinson
Cashier ..........................................................John G. Steele
Assistant Cashier ..........................................R. W. Roberts
Directors.
DeWell Gann,           J. W. Ashby,           J. D. Reed,
       W. N. McCray,                   H. F. Miller,
John L. Hughes,        E. Y. Stinson,         John G. Steele.
We solicit your patronage.

"That the said bank was from that time on until the 10th day of September, 1908, continued under the management above mentioned, at which time the bank was placed in the hands of a receiver. The said bank has been adjudged

by the chancery court of Saline County to be insolvent; that the proceedings of the meeting above mentioned were written down at the time by the secretary of the meeting, but the same has since been lost or destroyed. The Saline County Bank never kept a record or minute book of the proceedings of its stockholders or directors; the minutes last referred to having been taken down on a tablet, which, as above stated, was lost or destroyed.

"(7). February 3, 1908, was not the date of the annual meeting of the stockholders of the corporation. There was no regular date fixed by the by-laws of the said corporation for its regular annual meeting, but stockholders and directors had been accustomed to meet upon verbal notice by the cashier.

"(8). All the foregoing stipulations of fact are subject to exceptions by either party for competency, relevancy and materiality."

The court found the issues of fact and law in favor of the appellee, and from the judgment in favor of the appellee appellant duly prosecutes this apppeal.

*Chas. C. Sparks* and *W. H. Martin*, for appellant.

1. Overissued stock is void, no matter how made, and the holder thereof is not a stockholder. 4 Thompson, Corp., § 3545.

There was an overissue of stock by the Saline County Bank. Failure to give the notice required by the Constitution, and failure to show the affirmative vote of "persons holding the larger amount in value of the stock," forbid any other conclusion. Art. 12, § 8, Const. 1874; Kirby's Dig., §§ 845, 838, 856; 147 Cal. 581; 109 Am. St. Rep. 176; Black, Int. of Laws, 21; Cooley's Coms. Lim., (7 ed.) 114, 119, 201, 213, 214; Sutherland, Stat. Con., § 79; Thompson, Corp., (2 ed.) 3547-8, 3550-51; 3553-54, 3565-66, 3576-77; 165 Ill. 427; 56 Am. St. Rep. 203; 124 Am. St. Rep. 228; 169 Ind. 364; 26 Am. & Eng. Enc. of L., (2 ed.) 857.

2. The Saline County Bank, under the facts of this case, became indebted to appellant in the amount she subscribed for the stock as for money had and received; and it follows that Hughes' testator became indebted to her in like amount by reason of his failure as president of the bank, to file the

certificate required by law. Kirby's Dig., § § 818, 859; 95 Ark. 327; 180 Fed. 544.

*Mehaffy, Reid & Mehaffy,* for appellee Hughes.

1. The stock subscribed by the intervener and issued to her is, as to her and other stockholders and creditors, not an overissue, but was issued in pursuance to a *bona fide* attempt to increase the capital stock, and was such *de facto.* 1 Cook on Corp. 550; *Id.* § 288; 96 U. S. 328; 30 Fed. 513; 77 Wis. 453; 39 Fed. 13; 134 U. S. 91; 4 Thompson on Corp., § 3620; Kirby's Dig., § § 835, 856; 81 Ark. 391; 52 Minn. 239; 48 N. J. L. 599; 76 Mich. 579; 24 Mich. 393; 62 Atl. 693; 91 N. W. 424; 56 S. W. 35; 73 N. W. 147; 81 N. E. 29; 45 Atl. 951; 2 Beach on Priv. Corp., § 485; 133 S. W. 828.

2. After having received the stock and enjoyed the benefits thereof, she can not demand a rescission and recover her subscription after the bank has gone into the hands of a receiver.

3. Whether the proper steps or procedure were observed in the attempt to increase the capital stock, and whether the bank exceeded its charter powers in issuing stock in excess of the original capital, are questions which concern the State alone and can not be raised by the subscriber.

WOOD, J., (after stating the facts). Our Constitution provides that "no private corporation shall issue stocks or bonds, except for money or property actually received or labor done, and all fictitious increase of stock or indebtedness shall be void; nor shall the stock or bonded indebtedness of any private corporation be increased, except in pursuance of general laws, nor until the consent of the persons holding the larger amount in value of stocks shall be obtained at a meeting held after notice given for a period not less than sixty days, in pursuance of law." Art. 12, § 8, Const. of Ark.

Section 838 of Kirby's Digest provides as follows: "The amount of capital stock in every joint-stock corporation shall be fixed and limited by the stockholders in their articles of association, and shall be divided into shares of twenty-five dollars each; but every such corporation may increase its capital stock, and the number and amount of shares therein at any meeting of the stockholders specially warned for that purpose."

Section 856 provides as follows: "When any such corporation shall increase its capital stock, as provided in section 838, the president and directors shall, within thirty days thereafter, make a certificate thereof, which shall be signed, deposited and recorded as provided in section 845."

It will thus be seen that our Constitution and laws provide for the increase of capital stock of private corporations.

A distinction is made in the authorities to this effect: Where, under the Constitution and laws, an increase of capital stock is prohibited, or where such increase is permitted but declared by statute to be illegal unless the statutory requirements for its increase and issuance are observed, in all such cases the irregular increase and issuance of such stock on the part of the corporation is a fraud, and those who have purchased such stock may rescind the contract and sue the corporation for the money paid for such stock; or, if a subscription to such stock is unpaid, the subscriber thereto may repudiate the contract, and is not estopped by his subscription or anything he may have done as a holder of such stock. In other words, the increase of stock under such Constitution and statutes (unless in compliance therewith) is *ultra vires* and utterly void. But where the Constitution and laws, as do ours, expressly authorize the increase of stock and provide for certain statutory procedure, which is not a prerequisite to the validity of the stock, in such cases one who has subscribed and has not paid for shares of the increase of stock, or who has purchased and paid for same, is estopped from asserting that he is not a stockholder. He may be held for his subscription to such stock, or if he has paid for same he can not repudiate the contract and sue the corporation for money illegally obtained.

The distinction is recognized in the case of the *American Tube Works* v. *Boston Machine Co.*, 139 Mass. 5, 11, cited and relied on by learned counsel for appellants. In that case the court said:

"The issue of special stock being invalid and being open to repudiation by the corporation itself, or by dissenting stockholders, the plaintiff had an election to rescind the contract under which the special stock was taken, and to be restored to its original position. It was not bound by any estoppel.

In all the cases which have come under our observation where one has been held to be deemed a stockholder by estoppel, there has been a legal creation of the capital stock. But where the issue of the shares is illegal, where no sufficient steps have been taken to authorize the creation of the special stock, where a person has acted and been treated as a stockholder in respect to shares which the company had no power to issue, and where the shares can not legally exist, the person taking them can not, by estoppel or otherwise, become a member in respect to them."

The Supreme Court of the United States also recognizes the distinction in *Scovill* v. *Thayer*, 105 U. S. 143, p. 149, where the court said:

"It is true that it has been held by this court that a stockholder can not set up informalities in the issue of stock which the corporation had the power to create. (Citing authorities). But those were cases where the increase of the stock was authorized by law. The increase itself was legal and within the power of the corporation, but there were simply informalities in the steps taken to effect the increase. These, it was held, were cured by the acts and acquiescence of the defendant.

"But here, the corporation being absolutely without power to increase its stock above a certain limit, the acquiescence of the shareholder can neither give it validity, nor bind him or the corporation. 'A distinction must be made between shares which the company had no power to issue and shares which the company had power to issue, although not in the manner in which, or upon the terms upon which, they have been issued. The holders of shares which the company has no power to issue in truth had nothing at all, and are not contributors.'"

The language of our Constitution above quoted shows that the sixty days' notice therein required in pursuance of law was in order that the consent of a majority in value of the stockholders might be obtained to any proposed increase of the stock. The agreed statement of facts warrants the conclusion that the majority in value of the stockholders, indeed all who claimed to have any interest in the stock of the bank, were present at the meeting when, on the 3d day of February, 1908, the stock was increased.

The uncontradicted evidence shows that there was a *bona fide* intention and effort upon the part of all the stockholders of the bank to increase the capital stock. The increase was all subscribed for, and the appellant received her certificate for the amount for which she subscribed and held the same for some time before a receiver was appointed.

The facts bring the case well within the doctrine of the *Upton* cases, announced by the Supreme Court of the United States in *Sanger* v. *Upton,* 91 U. S. 56; *Webster* v. *Upton,* 91 U. S. 65; *Chubb* v. *Upton,* 95 U. S. 665; *Pullman* v. *Upton,* 96 U. S. 328. These cases are cited by Purdy's Beach on Private Corporations, p. 397, where the doctrine of those cases is crystallized as follows: "Where the power to increase its capital stock exists and is exercised, the corporator's failure to perform some act devolved upon it in connection therewith, such as recording and publishing its action, constitutes an irregularity or neglect of duty of which the State only can complain or take advantage in a direct proceeding against the corporation, but stockholders who have accepted portions of such increased stock are estopped from denying the validity of the increase upon any irregularity or neglect." See also cases cited in note 1, Cook on Corporations, p. 550; Thompson on Corporations, § 3635, and authorities cited in note.

Mr. Beach says: "The validity of irregularly issued stock is based upon its analogy to the case of a *de facto* corporation." Purdy's Beach on Corporations, § 275.

In the case of *Whipple* v. *Tuxworth,* 81 Ark. 391, at page 400, Judge BATTLE, speaking for the court, quotes the following from Mr. Clark on Corporations: "Most of the courts hold that there is a corporation *de facto* whenever there is a valid law under which a particular kind of a corporation may lawfully be organized, and persons having the required qualifications undertake, in good faith, to organize such a corporation thereunder, comply at least colorably with the law, and afterwards assume to act as a corporation, though particular provisions of the law are not complied with. And they hold that it is altogether immaterial in such cases whether compliance with the particular provisions was intended by the Legislature as a condition precedent to the formation of the corporation or not."

In *Jones* v. *Dodge,* 97 Ark. 249, we held (quoting syllabus): "One who contracts with an acting corporation can not defend himself against a claim on such contract by alleging the irregularity of its organization." The same rule would apply as to irregularities in the authorized increase of capital stock.

The appellant purchased and paid for shares of stock in the Saline County Bank. She obtained what she contracted for. There is no fraud shown to have been perpetrated upon her by the bank through its officers, and the bank does not owe her anything. Therefore the estate of John L. Hughes, deceased, is not liable because of any failure upon his part as president of the bank to file the annual certificate required by section 848 of Kirby's Digest.

The holding of the circuit court to this effect was correct, and the judgment is affirmed.