NEDRY v. VAILE.

Opinion delivered October 27, 1913.

1. CORPORATIONS—DIRECTORS—RELATION TO STOCKHOLDERS AND CREDITORS.—The directors of a corporation stand in the relation of trustees to the stockholders and creditors of the corporation. (Page 590.)

2. CORPORATIONS—DIRECTORS—PURCHASE OF ALL ASSETS—FRAUD.—A purchase of all the assets of a corporation by a director is only to be voided for fraud at the instance of some party in interest. (Page 590.)

3. CORPORATIONS—SALE OF ASSETS TO DIRECTORS—FRAUD—JUDGMENT-CREDITOR.—A corporation owed certain bona fide commercial debts, and sold all of its assets to one of its directors for a good and sufficient price, and paid said debts with the proceeds. Held, in the absence of a showing of fraud the sale will not be set aside upon suit of a judgment-creditor. (Page 592.)

4. INSOLVENT CORPORATIONS—PREFERENCES—TIME OF OBJECTION.—A judgment-creditor of a corporation who fails to bring suit within ninety days after it has notice that the corporation had disposed of its assets to other creditors, is barred from setting aside the sale under Kirby's Digest, § § 949 and 951. (Page 593.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This is an appeal by plaintiffs from a decree of the chancery court in defendants' favor in an action brought by Annie Nedry and John B. Nedry against John Vaile,

John W. Vaile and Walton Vaile, to compel them to pay
the claims of plaintiffs as creditors of the Fort Smith
Automobile & Supply Company, a corporation, whose as-
sets defendants are alleged to have absorbed. The com-
plaint seeks to set aside certain conveyances made by the
corporation to the defendants as a fraud upon the cred-
itors of the company.

The Fort Smith Automobile & Supply Company was.
organized in 1907 with an authorized capital stock of
fifteen thousand dollars, with eleven thousand dollars
paid up. Subsequently, in the same year, the defendant,
John Vaile, bought the stock of Sam McCloud and A. M.
Sicard, in said company, amounting to six thousand dol-
lars, and paid therefor the sum of $1.15 on each dollar's
worth thereof. At the same time, the defendant, Vaile,
agreed with Jim Kelley, Frank Blocker and Gus Boh-
mer, the remaining stockholders of the company, that if
they would remain in the company, he would guarantee
to pay them, at any time in the future, par for their
stock with 6 per cent interest. The defendant, Vaile,
assigned to his sons, John W. Vaile, and Walton Vaile,
defendants in this action, one share of stock each, in
order that they might become directors in said company.
John Vaile was then elected president of the company,
Walton Vaile vice president, and John W. Vaile secre-
tary. In October, 1909, the defendant, John Vaile, ascer-
tained that the company was insolvent, and, pursuant to
the agreement made with Bohmer, Kelley and Blocker
in 1907, he purchased their stock at the price which had
been agreed upon. The First National Bank of Fort
Smith, of which John Vaile was also a director, was the
principal creditor of the company. On the 9th day of
June, 1909, said bank loaned to said automobile company
$9,936.33, and took its note therefor. Again, on July 6,
1909, the bank loaned to the company $2,122.15, and took
its note therefor. On July 12, 1909, the bank loaned the
company $2,625.25, and took its note therefor. Again,
on July 20, 1909, the bank loaned the company $2,695.75,
and took its note therefor. John Vaile became surety

on all these notes. The total amount of this indebtedness on the 1st day of November, 1909, was $13,802.07. This money was borrowed from the bank principally for the purpose of paying for automobiles purchased by the company. On November 1, 1909, said automobile company owed other commercial debts, amounting, in the aggregate, to $3,082.43, and to Gus Bohmer, for labor and salary, the sum of $316.21, and to John Vaile, for money borrowed from him to meet the payrolls, the sum of $932.71, making a total indebtedness due at the time of $18,133.42. At this date, the company had the following assets: Lot 9, in block 2, Elmwood place; and lot 3, in block 9, Fitzgerald Addition to the city of Fort Smith, Ark.; and also a lot of tools, supplies and automobiles in stock. For the purpose of paying the commercial debts of the company, its board of directors, by resolution in November, 1909, transferred these assets to John Vaile for the aggregate sum of $17,659.55. A deed was made to him to the lots above described, and the consideration therefor was $12,000. He paid $4,000 for the automobiles on hand, and $1,659.55 for the tools and other supplies in stock, and a bill of sale therefor was executed to him. Vaile sold lot 3 in block 9, Fitzgerald Addition to the city of Fort Smith, to one Woodson for the sum of $10,000. He sold the tools, etc., for the sum of $1,546.31, and the automobiles for $3,950. From the book accounts, he collected $163.24, making the total sum realized from the assets sold, $15,659.55. He paid out on the debts of the company listed above, the sum of $17,-659.55. This included $458.84 of the debt owed John Vaile, himself, by the company. The market value of the lot in Elmwood Place, according to the testimony, is $200. On the 15th day of February, 1910, the said company filed its annual statement, as required by law, signed by its president and attested by its secretary, in which it stated that it had no assets and owed no debts. On the 29th day of June, 1911, it filed with the county clerk and Secretary of State, the certificate required by law for the surrender of its charter. On August 19,

1908, the plaintiffs brought suit against said automobile company to recover damages for personal injuries which they alleged they had sustained by reason of the negligence of the servants of said company. On June 30, 1910, plaintiffs obtained judgment against the company in the circuit court in favor of Annie Nedry for $5,000, and in favor of John B. Nedry, in the sum of $20. An appeal was taken to the Supreme Court by said automobile company, but no supersedeas bond was given. The judgment was affirmed by the Supreme Court on the 30th of October, 1911. See *Fort Smith Automobile & Supply Co.* v. *Nedry,* 100 Ark. 485. On the 29th day of June, 1911, executions were issued on said judgment and returned unsatisfied on August 9, 1911, because the officer was unable to find anything to levy on. The present suit was instituted on the 23d day of November, 1911.

John Vaile was placed on the stand by the plaintiffs, and, after testifying that notes were given to the First National Bank to pay drafts drawn for Ford cars by the factory, there also appears in his testimony the following: "That there was no credits on the back of either of the notes given for the Ford cars in June and July, 1909, and he did not know what became of the cars, or what became of the money after they were sold." John Vaile also became a witness for the defendants, and testified that he bought the stock of Bohmer and others, as stated above, in pursuance of the agreement he had made with them in 1907; and in this he is corroborated by Bohmer and the other two stockholders. He further stated that in October, 1909, numerous claims were in the hands of attorneys, who were pressing the company for payment. That he made an inventory of the assets of the company, and found them to be as listed above. That a resolution was passed by the stockholders of the company authorizing the company to convey to him all the assets listed above for the price stated above, in order that he might pay the commercial debts of the company, and that the assets were devoted to that purpose, and that he lost $2,000 by the transaction because he was unable to sell

the lot in the Fitzgerald Addition for more than $10,000, and that this amount was the fair market value of said property. He also stated that he sold the automobiles and supplies on hand for their fair market value, and that $200 was the fair market value of the lot in Elmwood Place. That he paid all the debts of the company, except the claims of the plaintiffs in this action, and he said that was not regarded by the company as a debt or liability due by it, and that when he took over the assets of the company, he did not agree to pay it. At the time he took over the assets of the company, the claim had not been reduced to judgment.

Other facts will be stated or referred to in the opinion. The chancellor found that the price paid by said Vaile for the lots, tools and automobiles purchased by him from the company was their fair market value at the time, and that the sale was made in good faith, and was free from fraud. The complaint of the plaintiffs was dismissed for want of equity.

*J. F. O'Melia* and *Ben Cravens,* for appellants.

1. The assets of a corporation are a trust fund for the payment of its debts, and may be followed into the hands of any person acquiring them with notice of the trust. An officer and director of the corporation is presumed to know its pecuniary condition and his purchase of the assets will not be *bona fide* and without notice of the trust. 8 Pet. 281; 15 How. 308; 22 *Id.* 387; 7 Wall. 299; 7 *Id.* 392; 11 *Id.* 96; 16 *Id.* 390; 17 *Id.* 610; 91 U. S. 60; *Id.* 47; 101 U. S. 205; 103 U. S. 498; 38 Ark. 17.

2. The purchase of the assets of an incorporated company by a director thereof is voidable at the instance of a party in interest. 91 U. S. 587; 23 Ark. 622; Kirby's Dig., § 949.

Jurisdiction obtained by a court of all the parties and the subject-matter remains and is binding until reversed. 5 Ark. 424; 8 Ark. 318.

3. Corporations, whether private or public, are liable for their torts, and for the tortious acts of their ser-

vants while engaged in the company's business, in the same manner that individuals under like circumstances would be liable. 26 Am. & Eng. Enc. of L. 75; 100 U. S. 697, 100 Ark. 485.

4. If there was a preference made it was in secret, and there was no point of time, so far as outsiders were concerned, from which to measure the ninety days.

Appellants were in a legal sense such creditors of the Fort Smith Automobile & Supply Company at the time it disposed of its assets as to entitle them to participate in a *pro rata* distribution of the assets. 143 N. Y. 398; 2 Root (Conn.) 261; 2 Day (Conn.) 70; 37 N. J. L. 300; 81 Ill. 186, 25 Am. Rep. 276; 6 Ill. 397, 41 Am. Dec. 190; 83 Ind. 157; 62 N. E. 100; 51 O. St. 462-468, 38 N. E. 881; 25 Utah, 379, 71 Pac. 873-878; 107 Fed. 311-317; 63 Ark. 244. Appellants are not barred for failing to institute suit within ninety days after the company had transferred its assets. 63 Ark. 244; 67 Ark. 11.

*Winchester & Martin,* for appellees.

1. Directors may contract with the corporation just as any one else may do, provided the transaction is in good faith, for a fair consideration and is authorized by the board of directors. 150 U. S. 386, 37 Law. Ed. 1117; 71 Ark. 514; 128 Mo. 473; 157 U. S. 316, 39 Law. Ed. 716; 174 Mass. 224, 54 N. E. 532; 10 Cyc. 807, note 90; and authorities cited.

2. That the purchase of the assets of a corporation by a director thereof is voidable at the instance of a party in interest, is true if the sale is procured by fraud or misunderstanding, or without the action of a majority of the board of directors; but, as a general rule, directors have power to enter into contracts with their corporations. 10 Cyc. 794-4; 150 U. S. 386, 37 Law. Ed. 1117.

The statutory prohibition against giving preferences to creditors by corporations in this State extends to those preferences which are sought to be set aside by proper proceedings begun in the chancery court within ninety days after they are given. Kirby's Dig., § 951; 71 Ark.

514, 20 S. E. 765; 111 Fed. 782; 50 N. W. 1117; 150 U.
S. 150, 37 Law. Ed. 1117, 150 U. S. 386.

3.   The date from which the running of the ninety
days limited by the statute is clearly fixed by the notices
and certificate filed with the clerk and Secretary of
State, by the record of the deed to Vaile, the *nulla bona*
return of appellant's execution, etc.   67 Ark. 11.   After
two years' delay and the assets disposed of to pay cred-
itors, it is too late to complain.   Appellant's cause of
action did not survive against a director after dissolu-
tion of the corporation.   143 N. Y. 398.

4.   There is no direct trust or specific lien on the
property of a corporation in favor of its creditors.   71
Ark. 514; 128 Mo. 473; 157 U. S. 316; 150 *Id.*, 37 L. Ed.
1117; 20 S. E. 765; 111 Fed. 782; 50 N. W. 1117.   The
company had the right to pay the bank, even though
Vaile was an endorser on the notes, for the bank was
neither a stockholder nor director.   34 S. E. 348; 29 *Id.*
27; 51 N. E. 642; 45 *Id.* 775.

5.   Preferences of creditors by a corporation are
not void under the act of 1893.   71 Ark. 515; 59 Ark.
562; 150 U. S. 37.

HART, J., (after stating the facts).   It may be said
at the outset that a director of a corporation stands in
the relation of a trustee to the stockholders and creditors
of the corporation.   Some of the authorities hold that a
purchase by a director of all the assets of the corpora-
tion is absolutely void, without regard to the good faith
of the transaction, and that the property belongs to the
corporation the same as it did before such sale.   Our
court has held, however, that such sale is only to be
voided at the instance of some party in interest for fraud.
*Jones, McDowell & Co.* v. *The Arkansas Mechanical &
Agricultural Co.,* 38 Ark. 17; *Wesco Supply Co.* v. *El
Dorado Light & Water Co.,* 107 Ark. 424.   In the last
mentioned case, the court held (quoting from syllabus) :

"When one corporation of which A is the president,
manager and owner of all the stock, sells all its assets to

another corporation of which A. is also president and manager and owner of four-fifths of its stock, and the new company issued its stock directly to A. in payment for the transfer, and A. knew that the old company was indebted to the plaintiff, and knew of the insolvent condition of the old company, *held*, the new company is not an innocent purchaser of the assets of the old company and is bound to the payment of the creditors of the old company to the extent of the value of the assets received therefrom, whether it agreed to assume the obligations of the old company or not."

In that case, however, it appears that the president and principal owner of the stock of the old corporation as well as the purchasing corporation was also the principal creditor of the old corporation, and that the assets of the old corporation were chiefly used for the payment of his debt, and the court held that under all the circumstances of the case the sale was fraudulent and could be set aside by a creditor of the corporation. Here the facts are essentially different. It is true that John Vaile was surety on the debt due the First National Bank, which was the principal creditor of the company, but he was not primarily liable for the debt. The testimony clearly shows that the Fort Smith Automobile & Supply Company was actually indebted to the bank in the amount claimed by it, and the mere fact that Vaile was surety for the debt is not sufficient to make the transfer of the assets of the corporation to him fraudulent. Vaile testified (and his testimony in this respect is not contradicted) that he paid the fair market value for all the assets of the company which were conveyed to him, and that the assets were conveyed to him, under resolution passed by the board of directors for the purpose of enabling him to pay the debts of the company, which he did pay, and which are listed in the statement of facts. These claimants were all *bona fide* creditors of the company, and the company actually owed them the amounts paid to them by Vaile. Vaile sold one of the lots conveyed to him by the automobile company for $10,000,

and he said this was the fair market value of the lot. So·
it will be seen from the statement of facts that Vaile
lost $2,000 in the transaction and reaped no personal
benefit from it. It is true that when placed upon the
stand by the plaintiffs, the record shows that he stated
that the money borrowed from the First National Bank
was used in paying for cars consigned to the company,
and that he does not know what became of the cars or the
proceeds of sale thereof. When placed upon the stand
by the defendants, however, he testified that some of the
money arising from the sale of cars was used in paying
the running expenses and the commercial debts of the
corporation. He testified that he made an inventory of
all the assets of the company and has accounted for these
assets and the disposition he made of them. If it was
thought or believed by the plaintiffs that assets belong-
ing to the company had been concealed by Vaile or the
other defendants, an effort should have been made by
them to develop that fact. The present suit is not predi-
cated upon the fact that any of the assets of the company
were not accounted for, but is based solely upon the fact
that the sale to Vaile was in fraud of the rights of the
creditors, and on the further fact that under the laws of
this State insolvent corporations can not prefer cred-
itors. It will thus be seen that no attempt was made by
plaintiffs to develop the fact, if such be a fact, that assets
of the corporation were concealed by the directors and
not accounted for. Hence, under all the circumstances,
we think that the finding of the chancellor that the sale
to Vaile was made in good faith for the purpose of pay-
ing the commercial debts of the corporation, and that
the same was free from fraud, was not against the pre-
ponderance of the evidence.

Section 949 of Kirby's Digest provides that no pref-
erence shall be allowed among the creditors of insolvent
corporations, except for the wages and salaries of labor-
ers and employees. Section 951 provides, in substance,
that every preference obtained, or sought to be obtained,
by any creditor of such corporation, whether by attach-

ments, confession of judgment, or otherwise, and every preference sought to be given by such corporation to any of its creditors, in contemplation of insolvency, shall be set aside by the chancery court if complaint thereof be made within ninety days after such preference is given or sought to be obtained. In the case of *Dozier* v. *Arkadelphia Cotton Mill*, 67 Ark. 11, the contention was made that the preference by a board of directors of an insolvent corporation was not objected to within ninety days after the same was given, as required by section 951. The court held that the objection was not well taken, because the preference was made in secret and without knowledge of the party aggrieved, and that therefore there was no point of time from which to measure the ninety days. In that case, the directors of the corporation, by a resolution, provided for the sale of its assets and paid certain creditors to the exclusion of others, but there was nothing in the proceedings or transactions by which the creditor who was not paid could have ascertained that the corporation had disposed of its assets, and on this account the court held that the preference was made in secret and that there was no point of time from which to measure the ninety days, so far as outsiders were concerned, and no showing made that the plaintiffs in the action had notice of the distribution or payments made to the other creditors. Here the facts are essentially different. The corporation, by resolutions complying with the statutes, formally surrendered its charter, and after the plaintiffs had obtained a judgment in the circuit court and the case had been appealed to the Supreme Court, no supersedeas bond having been given, they caused an execution to be issued on the 3d of July, 1911, and the sheriff, on the 9th day of August, 1911, returned said execution unsatisfied, for the reason that he was unable to find anything to levy on. The present suit was not commenced until November 23, 1911. Under the authority of *Papan* v. *Nahay*, 106 Ark. 230, the plaintiffs were creditors of the corporation, but be-

cause they did not bring suit within ninety days after they had notice that the corporation had disposed of its assets to its other creditors, they are barred from setting aside the sale under sections 949 and 951 of Kirby's Digest. The decree will be affirmed.