## DAVIS *v.* SCOTT, RECEIVER.

### Opinion delivered May 21, 1917.

1. ESTOPPEL—REORGANIZATION OF BANK—PARTY NOT PARTICIPATING IN REORGANIZATION MEETING.—A depositor and shareholder in a bank, who had purchased stock therein, but twenty per cent. of which had been paid into the bank, is not estopped by anything done at a meeting of the stockholders of the bank, in an attempt to reorganize the same, when he was not present and took no part in the meeting.

2. BANKS AND BANKING—PAYMENT OF CAPITAL STOCK.—A bank was organized and capitalized at $25,000, of which only $5,000 was paid in. At a meeting of stockholders, it was sought to reorganize the bank, and increase its capital stock to $30,000. One H. subscribed for $20,000 of this and paid in the same. *Held,* H.'s payment did not constitute a payment of the unpaid stock subscriptions of shareholders, who had not paid for their share in full.

3. CORPORATIONS—ANNUAL STATEMENT—LIABILITY OF PRESIDENT—APPLICATION OF FUNDS.—Where the president of a corporation incurs liability for failing to file an annual statement, the amount paid by him will go to discharge his statutory liability and not as a payment of unpaid stock subscriptions of others.

4. CORPORATIONS—LIABILITY OF TRANSFEREE OF STOCK.—In the absence of a statute to the contrary a transferee of shares of stock succeeds to the rights and liabilities of the transferer.

5. CORPORATIONS—TRANSFER OF STOCK NOT FULLY PAID UP.—A transferee of stock from the original subscriber, who takes with notice that the stock is not fully paid up, is liable to creditors of the corporation to the extent of the amount unpaid.

6. LIMITATIONS—CLAIM AGAINST INSOLVENT CORPORATION.—The statute of limitations begins to run against the creditor of an insolvent corporation whenever he has notice that the corporation is insolvent, and notice may be presumed when the insolvency becomes a matter of general notoriety.

7. LIMITATIONS—INSOLVENT CORPORATION—APPOINTMENT OF RECEIVER.—The appointment of a receiver will not stop the running of the statute against the claim of a creditor against an insolvent corporation.

8. CORPORATIONS—UNPAID STOCK SUBSCRIPTIONS—COLLECTION.—The unpaid balance due on stock subscriptions is not the primary or regular fund for the payment of corporate debts, and an assessment must be made by the court to authorize the receiver to proceed in the collection of unpaid subscriptions.

9. CORPORATIONS—INSOLVENCY—ALLOWANCE OF CLAIM—LIMITATIONS.—Where appellant had a claim against an insolvent bank, the subscriptions to whose stock had not been entirely paid, the court made the following notation: "Dividends on the last named item to be withheld pending settlement with the claimant as stockholder in the bank." *"Held,* the notation did not stop the running of the statute of limitations.

Appeal from Saline Chancery Court; *J. P. Henderson,* Chancellor; reversed.

*Callaway & Huie,* for appellant.

1. Appellant is. not liable because the reorganization in February, 1908, supplanted and paid up the old stock. 104 Ark. 517.

2. Appellant was never liable personally for any unpaid balance. The stock itself was charged with a lien, regardless of whoever the holder might be. 96 Pa. St. 440.

3. If ever personally liable, the liability is barred. 131 Cal. 45; Kirby's Digest, § 5064; 47 Ark. 317; 49 *Id.* 468; 71 *Id.* 379, 382. No counterclaim nor cross-complaint was ever filed in this cause. 27 Ark. 500, 504.

*J. S. Utley,* for appellees.

1. Davis is liable as an original subscriber of stock. The bank had no authority to release him and did not do so. 10 Cyc. 452 *et seq.* In 104 Ark. 517, the court did not decide that the former stockholders were re-

leased. The meeting of stockholders February 3, 1908, was not held on notice and in form required by statute.

If the $25,000 original stock was all paid by reason of the increase of stock, Davis did not pay it and he is benefited by it to the extent of the payments made thereon. The reorganization was never completed and Davis is bound for the stock subscribed for. Six thousand one hundred and twenty dollars of his original shares has not been paid, and belongs to the assets of the bank and is in the nature of a trust fund for the benefit of creditors, and the statute of limitations has no application.

2. Appellee is not barred by limitation. The order of court was made January 21, 1910. Davis did not appeal. Hughes was paid his *pro rata* because he had paid his subscription in full (95 Ark. 321), and he was liable for failure to file the financial report required by section 859, Kirby's Digest. There is no merit in the appeal; the decree is right and should be affirmed.

### STATEMENT BY THE COURT.

Although not in form this is in substance a proceeding in equity by a creditor of an insolvent corporation against a transferee of unpaid shares of stock to hold him liable for the balance of the purchase money of the shares held by him; and we shall so treat it. The facts are as follows:

The Saline County Bank was organized at Benton, Arkansas, with a capital stock of $25,000, all of which was subscribed by the original incorporators. Stock certificates aggregating one thousand shares of the par value of $25 each were issued to the original subscribers on or about July 30, 1894. The subscribers paid in 20 per cent. of the amount subscribed, making a working capital of $5,000, and leaving $20,000 of the amount subscribed unpaid. It was generally understood among the stockholders that the capital stock of the bank should be the $5,000 paid in and dividends were paid upon this

basis. Two or three years after the corporation was organized, G. D. Davis, appellant herein, purchased 306 shares of stock from two of the original subscribers. He testified that he did not know the number of shares of stock that he was buying but that it was understood that he was buying $1,530 worth of stock in the Saline County Bank; that afterwards he was paid dividends on that amount of stock. In February, 1908, the stockholders realized that the bank was insolvent, and a meeting was held by them for the purpose of reorganization and of increasing the capital stock to $30,000. No notice of the meeting was published and the only notice given those present was a verbal one by the cashier. At this meeting it was voted to raise the capital stock from $25,000 to $30,000. John L. Hughes, president of the bank, subscribed for $20,000, Hattie Steele for $1,500 and other parties for smaller amounts of stock, making a total of $23,975 of the new subscription. This added to the $5,000 which had already been paid in, makes a total of $28,975. Certificates of stock were delivered to John L. Hughes and Hattie Steele for the amounts subscribed by them which were paid in. H. F. Miller, a subscriber, also paid in $40 on his subscription but no certificate of stock was issued to him. None of the other subscribers paid in any money and no certificates of stock were issued to them. It is conceded that the increase in the capital stock and the reorganization of the bank was never legally accomplished. On September 22, 1908, a receiver was appointed for the bank, and it was decreed to be insolvent. G. D. Davis at that time had on deposit in the bank, the sum of $2,800. He was not present at the stockholders' meeting held in February, 1908, but had been informed of the purpose of the meeting and consented to the reorganization. No new certificate of stock was issued to him because the reorganization was never perfected.

On January 21, 1909, the chancery court considered the claims of different persons which had been filed

against the bank. Among them the claim of G. D. Davis was allowed for $2,800 and accompanying the allowance was the following notation:

"Dividends on the last named item to be withheld pending settlement with the claimant as stockholder in the bank." The claims of other stockholders who had money on deposit in the bank were allowed and substantially the same notation made by the court. In July, 1913, the report of the receiver was filed in the chancery court and on July 28, 1913, G. D. Davis filed an intervention in which he asked that he be allowed his *pro rata* part on his claim of $2,800. On August 2, 1913, appellees filed their petition in which they objected to any payment being made to Davis and asked that they as creditors of the bank be allowed to recover the balance due the corporation on his shares of stock. They allege that he owned 306 shares of stock of the par value of $25 per share; that only 20 per cent of the par value of these shares had been paid in to the corporation and that 80 per cent. thereof was unpaid. Their intervention was treated by the chancery court as a suit in equity by a creditor of a corporation to collect unpaid subscriptions from the shareholders, and as above stated we shall so treat it.

Davis filed a reply in which he denied liability for any unpaid subscription of his stock and also pleaded the statute of limitations.

The chancellor found in favor of appellees and denied appellant relief asked for by him. The case is here on appeal.

HART, J., (after stating the facts). (1-2) It is first contended by counsel for appellant that he was entitled to relief under the principles announced in *Steele* v. *Hughes*, 104 Ark. 517. That suit grew out of the failure of the Saline County Bank. It will be remembered that when the bank was first organized $25,000 of capital stock was subscribed for, but only $5,000 of it was actually paid in. The bank carried on its business until

February, 1908, when it was discovered to be in an insolvent condition. An attempt was made to reorganize the bank and to increase its captal stock to $30,000. J. L. Hughes, the president of the bank, had on deposit $20,-000, and he agreed to subscribe for that much stock in the bank as it was to be reorganized. Mrs. Steele also subscribed for $1,500 of stock and paid in that amount to the corporation. Certificates of stock were issued both to Hughes and to Mrs. Steele. No certificates of stock were issued to the other subscribers because they had paid nothing on their subscriptions. After the receiver was appointed, Mrs. Steele instituted an action in which she endeavored to collect the $1,500 paid in by her on the reorganization of the bank from the estate of J. L. Hughes, he having died during the year 1908. She asked for a recovery on two grounds: First, that the reorganization was never legally accomplished, and, second, that John L. Hughes had refused and neglected to file the certificate as president of the corporation which is required to be done annually by the statutes of Arkansas, and that for this failure he became liable for the debts of the bank. This court held that the reorganization of the bank and the increase of the shares of its capital stock was not legally accomplished but held that Mrs. Steele could not recover because she participated in the stockholders' meeting in February, 1908, and was estopped to deny the rightful increase of the capital stock of the bank and its reorganization. *Steele* v. *Hughes,* 104 Ark. 517. A majority of the court is of the opinion that appellees do not come within the rule of law there announced and are not estopped to question the proceedings had by the stockholders in February, 1908, looking to an increase of the capital stock of the bank. It is true that Hughes and Mrs. Steele paid in a sum of money to the bank which would exceed the amount of the capital stock originally subscribed for. But we do not think that this could be taken as the payment of the unpaid subscription of stock of appellant and others as far as

creditors of the bank are concerned. Appellees were depositors in the bank at the time the attempted reorganization proceedings were had, but they took no part whatever in those proceedings and can not be estopped by anything done at that meeting. As far as they are concerned the amount paid in by Hughes did not constitute a payment of the unpaid subscriptions of appellant and other shareholders. The reason is that appellees were creditors of the bank and took no part in its attempted reorganization which was never legally accomplished.

(3) It will be remembered that Hughes had failed to file the certificate required of him as president under our statutes and was on that account liable for the debts of the corporation. Appellees would have a right to have the money paid by Hughes applied to his statutory liability and not as a payment of unpaid subscriptions for stock of others. Therefore, a majority of the court do not think that appellant is entitled to be released from liability under the principles announced in that case. Mr. Justice SMITH thinks that appellant is released from liability under the rule announced in that case and for that reason has voted for a reversal of the judgment in the present case.

(4-5) We now come to appellant's plea of the statute of limitations. In the case of *Fletcher* v. *The Bank of Lonoke,* 71 Ark. 1, the court said: "It is well settled that the unpaid balances due on stock subscriptions are not the primary or regular fund for the payment of corporate debts. Each stockholder is liable on his unpaid subscription only for the proportion thereof which is necessary for the payment of the debts of the corporation when the property of the corporation is insufficient for that purpose. To hold him liable, the creditors must show that they have exhausted their legal remedies against the corporation without obtaining satisfaction, or that it is insolvent."

In the case of *Lester* v. *Bemis Lumber Co.,* 71 Ark. 379, the court held: "The period of limitation to an ac-

tion based on the written subscription of a stockholder in a corporation is five years, and commences to run whenever an execution has been issued against the corporation and returned unsatisfied, or whenever the creditor has notice that the corporation is insolvent."

Appellant was not an original subscriber of stock, but in the absence of a statute to the contrary, a transferee of shares of stock succeeds to the rights and liabilities of the transferer. 10 Cyc. 701. In an extensive case note to 3 A. & E. Ann. Cas., p. 1120, in which numerous authorities from the various States are cited, it is said that at common law (and we have no statute on the subject) the rule is that a transferee of stock from the original subscriber, taken with notice that the stock is not fully paid up, is liable to creditors of the corporation to the extent of the amount unpaid. Hence appellant was liable for the balance due to the corporation on his shares of stock.

Appellees allege in their petition that they were depositors in the bank on, before and after February 3, 1908; that at the time of the attempted reorganization of the bank John L. Hughes had on deposit more than $20,000, and that the bank was then in an insolvent condition; that John L. Hughes subscribed for $20,000 of the capital stock of said bank under said attempted reorganization and increase of capital stock; that he gave his check on said bank for that sum to pay that subscription; that he was charged with a check on the books of the bank and credited with the amount paid on said subscription of capital stock; that neither said check nor charge changed the assets of the bank in any particular. Other evidence was introduced which tended to show that the bank was then in an insolvent condition and that this fact was generally known.

(6-7) Under the authority of our own court, cited above, the statute of limitations began to run against the rights of appellees as creditors to sue appellant on the amount due by him to the corporation on his shares

of stock on February 3, 1908. As said in *Lester* v. *Bemis Lumber Co., supra,* a statute of this State permits the insolvency of a corporation to be shown by any competent evidence, and it is no longer required to sustain such an action that an execution be issued against the corporation and returned unsatisfied, for the action is in the nature of an equitable garnishment, and is governed by the statute in reference thereto.

The court further said that the statute of limitations would begin to run against the creditor whenever it had notice that the corporation was insolvent and that notice to the creditor of this fact would probably be presumed as soon as the insolvency of the company became a matter of general notoriety. As we have already seen, it was generally known that the corporation was in an insolvent condition in February, 1908. Appellees in their pleadings admit this to be the fact, and that the attempted reorganization did not have the effect to restore the bank to a solvent condition and that it continued to be in an insolvent condition from time to time until the receiver was appointed. This fixed a period of time from which the statute of limitations began to run against the right of action of appellees against appellant, and we do not think the appointment of a receiver in September, 1908, had the effect to stop the running of the statute of limitations.

(8-9) It is insisted, however, that the order of the court of January 21, 1909, in which the claim of appellant for $2,800 was allowed and a notation accompanying it had the effect to stop the running of the statute of limitations. The notation is as follows: "Dividends on the last named item to be withheld pending settlement with the claimant as stockholder in the bank."

We do not think this notation had the effect to stop the running of the statute of limitations. As we have already seen, the unpaid balance due on stock subscriptions is not the primary or regular fund for the payment of corporate debts, and an assessment would be required

to· be made by the court to authorize the receiver to proceed in the collection of these unpaid subscriptions. In other words, it requires affirmative action on the part of the court to make the assessment against unpaid subscriptions for stock, and we do not think the notation of the court was broad or comprehensive enough to include assessments and that it did not stop the running of the statute of limitations.

The appointment of the receiver did not have the effect to stop the running of the statute of limitations because the creditor might have asked the court to make the assessment and to have compelled the receiver to sue the delinquent holders of shares of stock.

Chief Justice McCULLOCH and Mr. Justice SMITH do not think that appellees are barred of relief by the statute of limitations, but as already stated Mr. Justice SMITH has voted for a reversal of the decree on other grounds.

It follows that the decree will be reversed and the cause remanded for further proceedings in accordance with views expressed in this opinion.

SMITH, J., concurs.

McCULLOCH, C. J., (dissenting). This is not a suit by creditors to enforce the statutory liability of stockholders for assessments on shares of stock, therefore the statute of limitations is not, I think, involved. This is a proceeding to wind up an insolvent banking corporation, of which appellant was both depositor and stockholder. As a depositor of the bank he occupied the relation of creditor, and as a stockholder he was a debtor to the extent of the unpaid subscription on his stock. While both of those relations subsisted, and before the statute of limitations barred the assertion of any rights or the enforcement of any obligations with respect thereto, the chancery court by proper decree established the claim of appellant as a creditor, but in the same decree the court annexed a condition to the allowance making it subject to settlement with the appellant of his lia-

bility as a stockholder. No appeal was taken from that decree. Appellant waited out the period of limitation for institution of an independent action against him to enforce his obligation as a stockholder to the creditors of the bank, and now asks the court to ignore the express condition upon which his claim as a creditor was allowed and to require the receiver to pay his claim despite the fact that he was, at the time the court allowed his claim, under legal obligation to the other depositors to hand over a much larger sum to reimburse such depositors for their losses.

The proceedings are in a court of equity, and it is contrary to principles of equity to permit appellant to assert his rights under the decree conditionally allowing his claim more than nine years ago, without requiring him to abide by the conditions specified in the decree. To apply the statute of limitations to that state of facts is, in my opinion, to transform the statute from a shield of protection into a sword of injustice. The original decree allowing the claim is still in force with its conditions annexed, and appellant should be required to abide by the conditions before he can be permitted to reap any benefits under it.