WILSON v. LUCAS.

Opinion delivered February 22, 1932.

184

186

*Cockrill & Armistead* and *W.A.Leach,* for petitioner.
*Joseph Morrison,* for respondent.

HART, C. J., (after stating the facts). This is an original application for a writ of prohibition to restrain the Arkansas Chancery Court for the Northern District from proceeding further in a suit by a single judgment creditor of the Stuttgart Rice Mill Company, a domestic corporation, with a return of execution "no property found," to reach equitable assets in the hands of the officers of said corporation in satisfaction of his judgment.

It is contended by counsel for the petitioner that under our mode of civil procedure, service cannot be had in a transitory action on a defendant in a county other than that of his residence, except where there is service in the county where the action is instituted on a codefendant who is jointly liable. Their contention is that there is no joint liability under the allegation of the complaint in favor of Lockridge against Wilson and McCoy. Hence it is contended that, the liability being several and not joint, the court should have sustained the motion by Wilson to quash the service of summons upon him in Pulaski County, the suit having been brought in Arkansas County. In short, it is claimed that there is no joint liability against Wilson and McCoy, and that jurisdiction could not be obtained over Wilson, a resident of Pulaski County, by joining him in a suit with McCoy, who is a resident of Arkansas County, in a suit brought in the latter county.

The general rule is that the capital stock and assets of a corporation constitute a trust fund for the benefit of creditors, which neither the officers nor the stockholders

can divert or waste. This rule was recognized and followed by this court in the case of *Jones, McDowell & Company* v. *Arkansas Mechanical & Agricultural Company,* 38 Ark. 17. In the discussion of the case, the court said:

"The assets of an incorporated company are a trust fund for the payment of its debts, which may be followed into the hands of any person having notice of the trust. This doctrine was invented by Judge STORY, in the case of *Wood* v. *Drummer,* 3 Mason 308, and it will constitute not the least enduring of his titles to be considered a great jurist. It has been applied by the Supreme Court of the United States in the following cases: (Citing cases.)

"The cases in the State courts on this subject are too numerous to cite; but it is sufficient to say that the doctrine has never been denied by any court of last resort in the Union, before which the question has come, and it is as well settled as any legal principle can be."

The court further held that a director of a corporation is conclusively presumed to know its pecuniary condition, and that his purchase of the assets will not be *bona fide* and without notice of the trust.

In the case of *Wesco Supply Company* v. *El Dorado Light & Water Company,* 107 Ark. 424, 155 S. W. 518, this doctrine was approved, and the court again held that the assets of an incorporated company are a trust fund for the payment of its debts which may be followed into the hands of any person acquiring them with notice of the trust.

In *Nedry* v. *Vaile,* 109 Ark. 584, 160 S. W. 880, the court again expressly approved the doctrine and held that the directors of a corporation stand in the relation of trustees to the stockholders and creditors of the corporation. The court said, however, that the purchase of the assets of a corporation by a director is only to be voided for fraud at the instance of some party in interest. This case also recognizes that chancery is an appropriate forum in which to enforce the rights of creditors.

In varying form, the principle has been before the court in other cases. To illustrate, in *Carter* v. *Union Printing Company*, 54 Ark. 576, 16 S. W. 579, it was held that a voluntary release of a stock subscription by an insolvent company is a fraud upon its creditors, whether its claims arose before or after the stock was issued.

In *Spear Mining Company* v. *Shinn*, 93 Ark. 346, 124 S. W. 1045, it was held that creditors of an insolvent corporation may, on behalf of themselves and all other creditors who may join with them, bring suit to discover assets of such corporation, and to obtain an accounting from other corporations who had assumed to pay, to the extent of such assets, the liability of the debtor corporation.

Other cases recognizing that the capital stock and assets of a corporation are a trust fund that must be devoted to the payment of its debts, which neither the corporation nor the individual stockholders can directly or indirectly divert from this purpose, are the following: *Ward* v. *McPherson*, 87 Ark. 521, 113 S. W. 132, and *Tiger* v. *Rogers Cotton Cleaner & Gin Company*, 96 Ark. 1, 130 S. W. 585.

The Supreme Court of the United States, in later cases than those referred to above, has reaffirmed the doctrine that the property of a corporation is a trust fund for the payment of its debts, which means that the property and assets of a corporation must first be appropriated to the payment of the debts of the corporation before any portion of it can be distributed to the stockholders. The court, in *Hollins* v. *Brierfield Coal & Iron Company*, 150 U. S. 371, 14 S. Ct. 127, quoted with approval from an earlier decision the following:

" 'The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense that, when the corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled in equity to have their debts paid out of the corporate property before any distribution thereof among the stockholders. It is also true, in the case of a corpora-

tion, as in that of a natural person, that any conveyance of property of the debtor, without authority of law, and in fraud of existing creditors, is void as against them.' "

In the case of *Wabash, St. Louis & Pacific Railway Co.* v. *Ham,* 114 U. S. 587, the court said that it was also true in the case of a corporation, as in that of a natural person, that any conveyance of the property of the debtor without authority of law and in fraud of existing credi-tors is void as to them.

In all the cases above cited, and in many others which might be cited the court expressly recognized that courts of equity have concurrent jurisdiction with courts of law to set aside conveyances of this sort which are made in fraud of the rights of creditors. The plaintiff specifically alleges that the sale of the assets of the corporation was made by the corporation, by Wilson as president and Mc-Coy as secretary, with the other stockholders of the corporation. The complaint alleges that the sale was made in fraud of the rights of plaintiff as a creditor of the corporation, and in this suit it is sought to discover the assets of the corporation and to appropriate them to the payment of the decree of the plaintiff against the corporation. Hence, under the allegations of the complaint, the liability of Wilson and McCoy was joint and several.

Counsel for the petitioner rely upon the principles of law decided in *Hatch* v. *Davis,* 101 U. S. 205, 25 L. ed. 885. We do not think that the principles of law there announced control in this case. The court there said that the presence of all the stockholders might be convenient, but was not necessary. The reason given was that the liability of the subscriber for capital stock of a company is several and not joint. Hence it was held by the court that it was not necessary to make all the stockholders parties to the action in a creditor's suit to enforce the liability of a stockholder for his unpaid sub-scription. The Supreme Court of the United States did not hold that, if the other stockholders had been made parties defendant in the lower court, that court would have been without jurisdiction. On the other hand, it

recognized that such a course might be convenient and proper in a given case. Unpaid damages due on stock subscriptions are not the primary fund for the payment of corporate debts. Each stockholder is liable on his unpaid subscription only for the proportion thereof which is necessary for the payment of the debts of the corporation when the property of the corporation is insufficient for that purpose. To hold the subscriber liable, the creditor must first show that they have exhausted their legal remedies against the corporation without obtaining satisfaction, or that it is insolvent. *Fletcher* v. *Bank of Lonoke,* 71 Ark. 1, 69 S. W. 580, and *Davis* v. *Scott,* 129 Ark. 226, 195 S. W. 383.

As we have already seen, the assets of the corporation which were disposed of at the time of its statutory dissolution was a primary fund for the payment of its debts, and was subject to be reached either in law or in equity by a judgment creditor in satisfaction of his debt.

In this view of the matter, we do not regard it as necessary to determine whether § 1728 of Crawford & Moses' Digest was repealed by § 38 of act 250 of the Acts of 1927. The latter act was an act to provide for the formation of corporations, the regulation of corporations, and for other purposes. Acts of 1927, p. 854. Both § 1728 of Crawford & Moses' Digest and § 38 of the Acts of 1927, above referred to, were acts regulating the liability of corporations where the capital stock had been withdrawn and returned to the stockholders before the payment of the debts of the corporation. Neither act could enlarge or lessen the ancient jurisdiction of chancery in the premises. The acts could only regulate the chancery practice. In this State, from the very beginning, it has been held that the jurisdiction of courts of equity under our Constitution is fixed and permanent, and that its jurisdiction cannot be enlarged or abridged. *Hempstead & Company* v. *Watkins,* 6 Ark. 317, 42 Am. Dec. 696; *Hester* v. *Bourland,* 80 Ark. 145, 95 S. W. 992; *Gladish* v. *Lovewell,* 95 Ark. 618, 130 S. W. 579; *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980;

and *German National Bank* v. *Moore,* 116 Ark. 490, 173 S. W. 401.

The result of our views is that the chancery court of Arkansas County had jurisdiction of the case, which is the subject of this controversy, and the petition for the writ of prohibition must be denied.