67   11
71   408

DOZIER *v.* ARKADELPHIA COTTON MILLS.

Opinion delivered October 21, 1899.

1. INSOLVENT CORPORATION—AUTHORITY OF DIRECTORS TO MAKE PREFER-
ENCE.—The stockholders of an insolvent corporation adopted a resolu-
tion that the corporation be dissolved, and authorized its directors to
sell its property and "apply the proceeds thereof to the company's lia-
bilities, so far as the same shall extend." The property was purchased
by a director of the company, who was also president of a bank to which
the company was largely indebted. With the acquiescence of his co-
directors, the director who purchased the property paid therefor by in-
dorsing credits on the notes held by his bank against the company.
*Held* that the resolution of the stockholders contemplated a *pro rata*
distribution of the company's assets among all the creditors, and that
the preference of the bank was unauthorized. (Page 14.)

2. SAME—PREFERENCE—TIME OF OBJECTION.—The contention that a prefer-
ence made by the directors of an insolvent corporation was not ob-
jected to within 90 days after the same was given, as required by the
act of March 14, 1893, is not well taken where the preference was made
in secret and without the knowledge of the party aggrieved, since
there was no point of time from which to measure the 90 days.
(Page 15.)

. Appeal from Clark Circuit Court in Chancery.

JOEL D. CONWAY, Judge.

*McMillan & McMillan,* and *Rose, Hemingway & Rose,* for
appellant.

McNutt, as assignee of the claims against the insolvent
coporation, had no vested right to a preference. He had only
the right which the original creditors had. Broom, Leg. Max.
§ 354; Sheld. Sub. § 87. No preference has been "obtained or
sought to be obtained" by him, in the sense of that expression
in sec. 1427, Sand. & H. Dig. The ninety-day limitation
prescribed for contesting preferences did not begin to run in his
favor until the filing of his answer, as that was his first asser-
tion of his claim. Nor did he have any power to dispose of
the proceeds of the sale, since it was not delegated to him by

the board of directors. 62 Ark. 33. The object of the insolvency statutes is to enforce the equal distribution of assests amongst creditors who have no liens. 98 U. S. 512; 59 Ark. 582. If the sale to McNutt was valid, he could not pay the purchase money by buying up claims against the insolvent corporation. 13 Ark. 576; 18 N. Y. 227; 3 Thomps. Corp. § 3786. The sale to McNutt was voidable at the instance of creditors of the corporation. The president could not be at the same time vendor and vendee. 23 Ark. 622; 54 *Id*. 633; 39 *Id*. 309; 47 *Id*. 537. This is still true, notwithstanding the. sale to Gibney, since the latter was incomplete and ineffectual. 58 Ark. 84; 15 N. E. 296; 45 Oh. St. 512; 4 How. 555. A decree should have been rendered below for a distribution of the assets in accordance to law.

*J. H. Crawford*, for McNutt.

Appellants have failed to comply with secs. 1428 and 1431, Sand. & H. Dig., requiring advertisement of notice as to their suit; and the court was justified in refusing them relief. The president of a corporation, being its chief officer, is presumably authorized to carry out its lawful contracts. 162 Ill. 431; S. C. 53 Am. St. Rep. 312.

*McMillan & McMillan*, and *Rose, Hemingway & Rose*, for appellants, in reply:

The objection that there was no notice to creditors can not be raised for the first time in this court. Sand. & H. Dig., § 1061. There was no need for it until the fund was brought into court for distribution. Sand. & H. Dig., § 1428. The resolution of the stockholders, simply directing the directors "to apply the proceeds (of the sale) to the company's liabilities, so far as the same extends," does not provide for preferences, and the fund should be equally distributed. 1 Pom. Eq. § 407. If McNutt had any authority to prefer himself, the burden was on him to show same. 55 Ark. 302; 45 Ark. 298; 1 Greenleaf, Ev. § 79; Broom, Leg. Max. 121.

BUNN, C. J. The Arkadelphia Cotton Mills, one of the appellees in this case, a corporation organized and doing busi-

ness under the laws of this state at the city of Arkadelphia, having become financially unable to carry on its business further, at a meeting of its stockholders, on the 24th of November, 1892, adopted the following resolutions, to-wit:

"Resolved, by the board of stockholders of the Arkadelphia Cotton Mills, that the embarrassed condition of this company's finances render it inexpedient to further prosecute the business for which it was formed. Therefore, be it resolved, that this corporation be dissolved and retire from business, and that its board of directors be authorized and empowered to sell, either at public or private sale, as it shall seem best to them, all of the rights, privileges, franchises, choses in action, real and personal property of any description belonging to this company, upon such terms as to credit and security as to them shall seem right and proper, and to apply the proceeds thereof to the company liabilities, so far as the same shall extend. Resolved, further, that, upon said sale being duly and properly made according to the instructions of these resolutions, the president of the board of directors of this company be authorized and empowered to execute and deliver bills of sale and deeds of conveyance for said property to the purchaser or purchasers thereof."

It is unnecessary to discuss the question as to whether or not a corporation at that time had the power to dissolve itself, as this one by these resolutions attempted to do, except in so far as the attempt to do so throws light on the intention of the stockholders, and aids in the construction of the language of the resolutions as to the disposition of the proceeds of the sale thereby authorized to be made.

In pursuance of these resolutions, the directors, about January, 1893, sold all the property of every description to one L. E. Gibney, giving him time to make arrangements to pay the $20,000 he was to pay for the same. At the expiration of ten or twelve months from this sale, it was found that Gibney could not pay said purchase price, nor any part thereof, and then he and McNutt, one of said directors and the president of the insolvent company, arranged so that McNutt should take his place as the purchaser of said property at the same price.

and this was accordingly consummated. At this time and when the dissolution resolutions were adopted, the cotton mill owed the local bank a large amount of money, equaling, as we infer, the amount for which the said property sold, and for which the company had executed and delivered to it (the bank) its promissory notes or other obligations indorsed by McNutt and its other directors, individually; McNutt being also the president of the bank. Sometime thereafter (it is not known when) McNutt paid the $20,000 by simply indorsing proportionate credits upon these indorsed notes of the bank against the company, thereby settling the same as far as might be, and thereby also in effect preferring said bank as one of the creditors of said company, and indirectly preferring himself and his co-directors of the company, as possible future creditors, 'had this settlement of the notes not been made. Although there was no formal ratification of this procedure by McNutt on the part of his co-directors, yet, by their silence, it may be presumed that they approved of it. The stockholders never had another meeting after the adoption of the dissolution resolutions, doubt less thinking that they had thereby done all they could towards winding up the business of the concern, and so gave no sanction to this mode of distribution, as far as the record shows.

The language of the resolutions of the stockholders in reference to the distribution of the proceeds of the sale of the property manifestly meant that the directors having the matter in charge should distribute the fund derived from any sale that might be made *pro rata* among the creditors of the concern; and the directors had no authority to make a different distribution of these assets, for in this they were acting under direct instructions from the stockholders. At the time these resolutions were passed, there was no statutory provision as to the dissolution of private corporations, nor statutes prohibiting insolvent corporations to make preferences among their creditors, but statutes to these ends were passed on the 12th and 14th of April, 1893, before the payment of the bank's claims was made as aforesaid, and at that time the whole spirit of the law was opposed to anything but an equal division in such cases, with a few specified excep-

tions; and this gave emphasis to the manifest intention of the stockholders, as expressed in their resolutions.

It is contended that, while the statute at this time forbade preferences, yet that this could only be made an objection within ninety (90) days from and after the time the preferences should be made. If this was a preference in fact, it was made in secret, so far as this record shows, and there was no point of time from which to measure the 90 days, so far as outsiders were concerned, and no showing is made that plaintiffs had notice of the distribution or payments made as aforesaid.

We are of opinion, therefore, that the decree of the court below dismissing plaintiff's bill for contribution should be reversed, and the appellants should have judgment against appellees in such amounts, respectively, as will give them *pro rata* shares with the plaintiffs, and the cause is remanded with directions to decree accordingly.

BATTLE and HUGHES, J. J., dissenting.