MORGAN COMPANY *v.* ELMES.

Opinion delivered June 5, 1916.

1. FRADULENT CONVEYANCES—FRAUD ON CREDITORS—RIGHT OF REDEMPTION.—It is a fraud on creditors, where property is conveyed, and the parties to the conveyance reserve the right of redemption in such a way as to deny its existence and refuse its execution for the benefit of the creditors.

2. FRAUDULENT CONVEYANCES—INSOLVENT CORPORATIONS.—Insolvent corporations are not allowed to prefer their creditors, and a conveyance that has the effect of doing so, is fraudulent and void as to them.

3. FRAUDULENT CONVEYANCES—FRAUD ON CREDITORS—TRANSFER OF PROPERTY BY INSOLVENT CORPORATION.—A transfer of all its property by an insolvent corporation, to one creditor, held to be fraudulent as to other creditors.

Appeal from Prairie Chancery Court, Northern District, *John M. Elliott,* Chancellor; reversed.

STATEMENT BY THE COURT.

Appellant Morgan Company brought suit on June 30, 1914, against appellees upon a note of the Buena Vista Veneer Co., dated January 5, 1914, and caused an attachment to be issued against certain property transferred by said company to Charles W. Elmes, which transfers were alleged to be fraudulent and prayed to be set aside as made in fraud of creditors.

On September 29, 1915, the S. H. Smith Co., appellant, brought suit against the same parties for $650.00

due on account by the Veneer Co., and alleged that the transfers of the property from the Veneer Co. to Elmes were fraudulent, and caused an attachment to be levied upon the mill site of the Veneer Co. that had been included in said transfers to Elmes. Afterwards Charles W. Elmes brought suit against Herman Romunder, who was president of the Veneer Co., the Buena Vista Veneer Co., the appellant companies and several others, alleging that the two sets of transfers of property from the Veneer Company to himself were to secure valid debts due him and constituted an equitable mortgage and prayed a foreclosure thereof. He answered the complaints of appellants denying the allegations thereof and filed a copy of his complaint in the foreclosure suit as a cross-complaint, in each of their suits. Appellants answered, denying the allegations of the complaint in the foreclosure suit, which were confessed by Romunder and the Veneer Company, and also the cross-complaints, and all the suits were consolidated and heard together.

The Veneer Company on the 21st day of March, 1914, after receiving $2,500 from the Morgan Co. as an advance for the purchase of veneer lumber stock, for which the Buena Vista Veneer Co. executed its note, and a deed and bill of sale, absolute in terms, of its manufacturing plant to Charles W. Elmes, appellee, who leased the plant back to the company which continued to operate it for a short while and shipped one car of veneer upon the contract with Morgan & Co., the proceeds of which was credited on the note, leaving a balance due of $2,002.54.

Prior to the 26th day of May, 1914, the Veneer Co. ceased operating the manufacturing plant and on that day executed a supplementary agreement, contract and bill of sale by which it conveyed in absolute terms, all of the property it owned not transferred in the March bill of sale to said Charles W. Elmes, forfeited and surrendered its lease, and all the stockholders of the Veneer Company, who had previously endorsed, transferred and

delivered to said Charles W. Elmes, every share of stock of the corporation, allowed their time to redeem to lapse. Upon the first information Morgan Co. had of these transfers, it diligently took the matter up and wrote to Mr. Elmes that it had been informed by the commercial agency of his purchase of the Buena Vista plant at Des Arc, asked a confirmation of the report and explained its interest in the matter by informing of the $2,500 advance to and due from the company. Elmes replied to this letter on the 29th of May, evasively, saying he did not buy the business and was not interested in the manufacturing part of the company and not in a position to give the desired information.

His attorney, E. C. Ferguson, on June 2, answering a letter of the Morgan Company to C. W. Elmes, stated it was referred to him, calling attention to the debt of $2,500 and said they were not responsible in any way for the Veneer Company, but naturally interested in keeping track of its doings. He also mentioned receiving a letter from Des Arc informing that Morgan Company had sent an order to be filled, saying "he had advised them that the shipper of the material must have its dealings direct with you as they are going to turn the order over to another mill to fill and he was giving the information in advance, that the shipment would not be the property of the Buena Vista Company nor credited on its account."

Appellant also wrote to the Buena Vista Veneer Company at South Bend, Ind., to Herman Romunder, the president of the company, at the same address, and received from him on July 1 a letter stating he had received on his return from an extensive trip their letters and telegrams, which had not been answered because he was out of town, and "after disposing of my holdings in the Buena Vista Veneer Co. to Mr. C. W. Elmes of Chicago, I have been attending to other business." Regretted that the condition at the plant, which he had formerly controlled, had required him to give

it up and thought that the plant would be operated again very shortly and be able to take care of all the business that came to it.''

A written agreement was made between Herman Romunder and Charles W. Elmes on the 21st day of March, 1914, reciting an indebtedness from Romunder to Elmes ''due and owing by Romunder'' and that he desired to procure further money and additional advances from Elmes to induce him to perform certain conditions set out and to secure the payment of the indebtedness of the first party, Romunder, and expend further money in his behalf and provide for the payment of moneys now due and other moneys to be advanced. In consideration of $1.00 the first party, Herman Romunder, agreed to deed 761 acres of land in Woodruff County and 160 in Prairie, and that the corporation, the Vencer Company, would execute a deed to the mill site ''and for the further consideration of the cancellation of the following indebtedness due and owing by Herman Romunder to Elmes, approximating $21,000 and also to the State National Bank and others,'' etc., reciting an agreement as to the payment of certain other debts and that Elmes was to furnish the money to pay certain creditors in order that Romunder might be released. He, Romunder, agreed to procure the consent of the Buena Vista Veneer Company to continue its liability on certain paper and through the corporation to pay said indebtedness himself, but if it could not be done Elmes was to pay it; to procure a deed from the company to Elmes of the mill site and a bill of sale of all the corporate assets, except the manufactured veneer, logs, notes and accounts receivable, and a transfer of the insurance policies. He agreed ''as an inducement to the execution of the contract that the moneys obtained from said Elmes, the banks and Daley were used by and for the benefit and purchase of property and conduct of business of the company, although it appears that some of said indebtedness is represented by notes executed by Herman Ro-

munder individually," "that the notes due the banks and Daley may be assigned to Elmes without recourse, Elmes to protect Romunder from any liability of payment of same, it being the intention to continue the liability of the Veneer Company on said notes in order to evidence the liability of said company for the moneys received, either by the corporation or said Romunder at the time the moneys were procured."

He was also to procure the endorsement of his own and all the other stockholders' stock in the Veneer Company and transfer and deliver same to Elmes as additional security, and if the contract expired by limitation, the stock was to become the absolute property of Elmes at his election, but if Romunder paid the $40,000 when due, the stock was to be surrendered to him.

Elmes agreed to surrender to the first party a note due June 1, 1913, for $20,500 and interest and accept the deeds and conveyances in payment and satisfaction of the $40,000 due and owing by said Herman Romunder and the Buena Vista Veneer Company to him. It was also stipulated, "It is mutually agreed between the parties that this agreement shall not in any wise be construed as a mortgage."

Elmes agreed that if the debt was paid within the year, to transfer the property back to Herman Romunder or to whomsoever he should direct, and if payment was not made within the year from date, the contract was to be void, and Romunder's rights cancelled. It was mutually agreed that Romunder was to lease the plant in his name or in the name of the company and operate it for one year, but if it was closed down for thirty days, beginning five months after the date of the instrument, Elmes was to take possession of the plant and Romunder released all claims under the contract.

The agreement was made binding upon the heirs and executors of both parties and signed "Herman Romunder, President;" Charles W. Elmes. Below the signatures follows the endorsement: "For one dollar and

other valuable considerations the Buena Vista Veneer Company hereby consents to become a party to the agreement and agrees to execute deeds and other papers as may be necessary to make the same effective. Signed, "Herman Romunder, President; Cannie Jones, Secretary."

This instrument was not acknowledged.

Romunder and wife conveyed the lands to Elmes, and the Veneer Company conveyed the mill site and the plant. On the 26th day of May, another agreement was entered into between Herman Romunder, party of the first part, and Charles W. Elmes, reciting the making of the agreement of the 21st of March, relating to the conveyance of the property and payment of the debt, and privileges of Romunder in regard to the sale of the mill site, etc., "and for the purpose of creating a supplemental agreement affecting a part of said contract and except insofar as modified hereby the original agreement stands." One dollar and other considerations are recited, and "it is agreed that the plant has been closed down more than 30 days, that it is desirable to sell said plant and property at the earliest possible time and Romunder waives his right under the agreement of March 21 in this regard and agreed to assist in converting the property into cash, waives the right to further time and gave the second party the right to sell the property at any time before September 21, for a sum not less than $40,000, "and if said sale is for a greater sum, the surplus shall be refunded to Herman Romunder," fixed the date for the sale of the timber lands and continued, "but it is specially agreed that this agreement and the agreement of March 21, 1914, shall not in any manner be construed to in any way create a trust holding of said property by said Elmes or to in any way restrict his right of giving an absolute deed thereto." This agreement was signed by Romunder and Elmes and by the Veneer Company.

Another contract was made on May 26, about advances of money for payment of certain debts of the Veneer Company from which were excluded the account of Robt. Romunder, the Morgan Company and others, which recited that it did not affect the agreement of the 21st of March, to which reference was made.

On the same day the Buena Vista Veneer Company executed a bill of sale to Charles W. Elmes of all of its right, title and interest in all its personal property not already conveyed and all its bills and accounts receivable and all property of every other kind and of its insurance policies, reciting that it was mutually agreed that an inventory was to be made and attached to the bill of sale and become a part of it. All money in the bank, all checks in transit and all the indebtedness due said company was transferred to said Elmes.

The Morgan and Smith companies, appellants, recovered judgments for the amount of their claims against the Veneer Company but the court decreed the conveyance executed to Elmes to be an equitable mortgage and not made in fraud of creditors, that the lien of same was superior to any claim of appellant companies and ordered the property sold free of their claim, from which decree this appeal is prosecuted.

*Emmett Vaughan,* for appellants.

The company was insolvent and the transfer of all its property to Elmes was fraudulent and void as to creditors. Romunder, the company and Elmes all worked in collusion for the purpose of defrauding the creditors. 3 Bump on Fraud. Conv. 41; 67 Ark. 122; Waite on Fraud. Conv. § 272; Bump on Fraud. Conv. 34; 65 Ark. 270; 74 *Id.* 186; 107 *Id.* 587; 39 *Id.* 70; 70 *Id.* 273; 50 Pac. 1020; 18 Wash. 114; 63 Am. St. 872. The decree is against the preponderance of the evidence and should be reversed. 41 Ark. 292. The managing officers of a corporation have no power to transfer the assets to a single creditor in payment of his claims. 5 Thompson on Corporations, 6285. It was *ultra vires* to use the

corporate assets to pay the debt of the president of the corporation. 172 S. W. 868; 95 Ark. 368.

*J. G., C. B.* and *Cooper Thweatt,* for appellees.

The transfers were a mortgage to secure a debt and were not in fraud of creditors. 103 Ark. 484; 88 *Id.* 289; 75 *Id.* 551; 101 *Id.* 135; 64 *Id.* 187; 61 *Id.* 442; 71 *Id.* 438; 28 *Id.* 82; 79 *Id.* 571. The transfers were *bona fide* and made for a valuable consideration, and the chancellor so found and his findings are sustained by the evidence.

KIRBY, J., (after stating the facts). The undisputed testimony shows that the Veneer Company was indebted for money advanced to it by the Morgan Company at the time of the first transfers; that a statement of its business made to Elmes showed such indebtedness, which statement did not show an indebtedness of the company to him for $20,500 later claimed to be the company's debt for money furnished it, the renewal note being executed by Herman Romunder, individually instead of for the company. The company was insolvent at the time of the execution of the first and all subsequent agreements between Romunder and Elmes and by these agreements and conveyances all its property of every kind was transferred to appellee, Elmes, to secure the payment, it is true, of said sum already claimed to have been advanced to the company, as well as the advances thereafter made in accordance with the agreements.

If appellee, Elmes, did not know that the company was insolvent when the first agreement and transfer was made, he was bound to know it was thereby rendered so, and to have known it when the later contracts and transfers, stripping it of every vestige of its property were made, all of which recited that they were but supplemental to the first agreement of March 21, referred to, which agreement was not, nor were any of the other agreements recorded. This first agreement provided that if the property sold for more than the indebtedness men-

tioned therein, the surplus should be returned to Romunder, without requiring it paid upon the company's other indebtedness. The agreement also expressly stipulated that it should not be considered as a mortgage and it was construed by Elmes' attorney as an absolute conveyance of the property.

(1). Taking such a conveyance in accordance with said agreements was calculated to deceive creditors and lead them to believe that no part of the property was subject to their demand, when in fact such was not the case. "The right to redeem is an interest of value and to reserve it in such a way as leaves it altogether in confidence between the parties enabling them to form a trust between themselves, and at their pleasure to deny its existence, and refuse its execution for the benefit of creditors, is plainly deceptive, and tends to delay, hinder and defraud creditors." Bump on Fraudulent Conveyances, p. 41; *Davis* v. *Jones,* 67 Ark. 122; Waite on Fraudulent Conveyances, Sec. 272.

The parties reiterated in the last agreement that neither of the agreements should in any manner be construed to in any way create a trust holding of said property by said Elmes or in any way restrict his right of giving absolute deeds thereto, while the complaint for a foreclosure and the cross-complaint allege that the instruments were but equitable mortgages for the security of debts and all the answers of the parties thereto, admitted that such was the case.

Appellee admits that it requires all the said agreements, contracts, bills of sale and conveyances to constitute what it now claims to be an equitable mortgage, contrary to the express terms of said instruments, saying in his brief: "The first mortgage consists of a deed from Romunder to lands in Woodruff County, a deed from Romunder to lands in Prairie County, a deed from the company to the mill site, seventeen acres, and a bill of sale from the company to the machinery and some other personal property and a contract signed by Elmes,

Romunder and the company, which provides that Elmes was to advance to the company certain money, which with a note of Romunder already due and owing to Elmes, would aggregate in all $40,000,'' etc.    *    *    *

"The second mortgage consists of a bill of sale from the company to Elmes to all of its personal property and a contract which provided that said bill of sale was to secure Elmes for certain advances to be made to the company for the purpose of paying off certain specified debts,    *    *    *    was not an agreement of Elmes to pay the company's debts generally.''

Conceding that the proof is sufficient to sustain the chancellor's finding that the indebtedness shown by the individual note of Herman Romunder for the payment of which the property was conveyed on the 21st of March was a debt of the corporation's for the payment of which its property was liable, it does not follow that the creditor in order to secure his own debt could advance other money to be used by the corporation and for the payment of certain of its debts, excluding the claim of appellant creditor and thereafter consume all the property of the said corporation in the payment of his said debt, leaving the corporation without any assets whatever out of which said creditors could make their debts.

(2-3)  Insolvent corporations are not allowed to prefer their creditors and a conveyance that has effect to do so is fraudulent and void as to them.  Sec. 949 Kirby's Digest; *Dozier* v. *Arkadelphia Cotton Mills,* 67 Ark. 11.  And since it requires all of said agreements, contracts, and conveyances, the ones first made as well as the last, and all must be considered together to constitute the mortgage appellee is attempting to foreclose, and were in effect but one transaction, effecting the purpose and intention of appellee and the insolvent Veneer Company, to transfer all its assets for the payment of appellees' debt and of the other creditors preferred, appellants whose claims were attempted thereby to be de-

feated, were in time in the filing of their suits to protect themselves against said fraudulent transfers.

The court erred in not so holding and the decree is reversed and the cause remanded with directions to enter a decree in favor of each of appellants for its *pro rata* of the fund realized from the sale of the assets of the corporation in proportion as their debts bear relation to the claim of Elmes and the proceeds realized therefrom. It is so ordered.